17882

S. E. McELVEEN, Sr., Marion E. Carter, Robert D. Pate and Julian Rembert, Appellants, v. J. C. STOKES, R. J. Makela, Claude Berry and B. B. Davis, and The State of South Carolina, Respondents.

(124 S. E. (2d) 592)

2

*Messrs. Baskin & Cothran* and *Jennings & Jennings,* of Bishopville, *for Appellants,*

*Messrs. Wistar D. Stuckey,* of Bishopville, and *L. Marion Gressette,* of St. Matthews, *for Respondents,*

*Messrs. Daniel R. McLeod, Attorney General,* and *J. C. Coleman, Jr., Assistant Attorney General,* of Columbia, *for Respondent, State of South Carolina,*

*Messrs. Baskin & Cothran* and *Jennings & Jennings,* of Bishopville, *for Appellants, in Reply.*

March 9, 1962.

BUSSEY, Justice.

This is an action brought by appellants against the respondents to declare unconstitutional an Act passed by the General Assembly of South Carolina entitled "An Act to Provide for the Appointment and Terms of Office of the Members of the Lee County Forestry Board." (Act No. 601 of the Acts of 1961); to declare the appellants to be lawfully constituted members of the board; to enjoin the respondents J. C. Stokes, R. J. Makela, Claude Berry and B. B. Davis from acting as members of said board, and to declare the said Act null and void.

The circuit judge issued a temporary injunction and rule to show cause. Upon motion of the individual respondents, the South Carolina Forestry Commission was made a party respondent. Following returns by all respondents and a hearing before the circuit judge, an order was issued dissolving the temporary injunction and holding the aforementioned Act constitutional. The appeal here is from that order.

The respondents appealed from the order of the resident judge settling the case on appeal and urge additional sustaining grounds.

Before reciting the factual situation here involved, and for a better understanding of the issues raised by the pleadings, it is necessary to revert to the history of forest fire protection legislation in South Carolina. Prior to 1945 many, but not all, of the counties of this State, realizing the need for the protection of forests, had passed as local legislation separate acts dealing with forest protection in those counties.

In 1945 the legislature apparently realized and concluded that there was a definite need for a state-wide forest fire

protection act, which was enacted at that session of the legislature, being now Sections 29-51 through 29-61 of the 1952 Code of Laws. None of said sections was amended until 1961.

Section 29-55 provides for the appointment in each county of a County Forestry Board consisting of five members to be appointed by the State Commission of Forestry on the recommendation of a majority of the County Delegation in the House of Representatives and the Senator of each such county and, *inter alia,* contains the following language:

"In case of a vacancy or termination of appointment on a county forestry board, such vacancy shall be filled in the same manner as provided for in the appointment of members thereof, except that if a vacancy shall exist in the office of member of a county forestry board for more than two months the then existing members of the county forestry board may recommend for appointment some suitable person to fill such vacancy and the State Commission of Forestry shall make the appointment on such recommendations."

It appears that in Lee County, due to political differences of opinions between the occupant of the office of Senator and the occupant of the office of House of Representatives from that county over a period of several years, considerable difficulty was experienced in agreeing upon recommendations of persons to fill vacancies on the County Forestry Board when and as they occurred. As a result of these political differences, during the early part of 1961 the Lee County Forestry Board, with one exception, was composed of the appellants here, all of whom had been appointed by the State Commission of Forestry pursuant to recommendations of the members of the Lee County Forestry Board, at least in *prima facie* accordance with the above quoted language from Section 29-55 of the Code. The one exception was one Grady Skinner who had been appointed by the State Commission of Forestry upon recommendation of the

legislative delegation. Mr. Skinner is not a party to this action and the title to his office is not in question.

This was the situation when the legislature passed Act No. 601, the constitutionality of which is here in question. The pertinent portion of said Act is as follows:

"SECTION 1. Lee County Forestry Board—members —terms—vacancies.—The County Forestry Board for Lee County shall be composed of the following members who shall assume office upon the effective date of this act, and whose terms of office shall expire at the times indicated following their names:

"(a) Grady Skinner for a term to expire June 30, 1961;

"(b) Claude Berry for a term to expire June 30, 1962;

"(c) J. C. Stokes for a term to expire June 30, 1963;

"(d) R. J. Makela for a term to expire June 30, 1964; and

"(e) B. B. Davis for a term to expire June 30, 1965.

"Thereafter vacancies upon the Board shall be filled in the manner provided in Section 29-55, of Code of Laws of South Carolina, 1952. Each of the terms, after the initial terms herein provided, shall be for a period of five years."

While the exceptions raise other questions, it is only necessary for us to determine whether the quoted Act is (as contended by the appellants) unconstitutional in contravention of Article III, Section 34, Subdivision IX of the Constitution, or whether it is constitutional (as contended by the respondents) as a special provision in a general law pursuant to Article III, Section 34, Subdivision X. The pertinent portion of Subdivision IX is as follows:

"In all other cases, where a general law can be made applicable, no special law shall be enacted."

The pertinent language of Subdivision X is as follows:

"Provided, That nothing contained in this Section shall prohibit the General Assembly from enacting special provisions in general laws."

The circuit judge concluded that the Act in question was an amendment to a general law and constitutional as a special provision in a general law within the purview of Article III, Section 34, Subdivision X.

By way of additional sustaining grounds the respondents urge that the decision of the circuit judge was correct in that there is need and justification for the Act and that a general law cannot be and is not applicable in this specific case.

In considering any question as to the constitutionality of a statute, we are not unmindful that it is a grave matter to overturn and to declare an enactment of the General Assembly to be unconstitutional. The applicable rule of law was well stated in *Thomas v. Macklen,* 186 S. C. 290, 195 S. E. 539, as follows:

"All presumptions are in favor of the power of that body to enact the law. All considerations involving the wisdom, the policy, or the expediency of the act are addressed exclusively to that branch of the state government. Its power to enact the law is the sole question addressed to this court. So long as doubts concerning this power remain, it is our plain duty to resolve them in favor of the validity of the act. But when the unconstitutionality of an act is clear to this court, beyond a reasonable doubt, then it is its plain duty to say so."

It is, therefore, our duty only to determine whether or not the act in question is clearly unconstitutional, beyond a reasonable doubt.

There are many prior decisions of this court dealing with various acts wherein the question was whether the particular act was permissive under Subdivision X, or prohibited under Subdivision IX of Section 34 of Article III of the Constitution. This court, in the case of *Tisdale v. Scarborough,* 99 S. C. 377, 83 S. E. 594, had the following to say with reference to Subdivision IX:

"There had grown up in the General Assemblies of the entire Union a disposition for legislation by delegation. That

kind of legislation was deemed pernicious; it lacked the settled consideration and consent of the lawmaking body; it evaded state-wide responsibility; it encouraged local activity; it discouraged the attrition of minds and the consideration of those problems which make for a wise public policy. The ninth paragraph was the fruit of this large conviction of the convention."

In *Salley v. McCoy*, 182 S. C. 249, 189 S. E. 196, with reference to the said subdivision, this court had the following to say:

"The clear intention of the framers of the Constitution of 1895 was by section 34 of article 3, to prohibit the enactment of special laws in all cases where a general law can be made applicable. In addition, it was desired to expressly prohibit special laws on certain named subjects. This intention was effectuated by naming the expressly prohibited subjects, and then providing that in all other cases no special law should be passed if a general law could be made applicable. The words 'in all other cases' were not intended to limit the scope of subsection 9, but rather to extend the scope of section 34 as to include any subject on which a general law can be made applicable."

In the case of *Shillito v. City of Spartanburg*, 214 S. C. 11, 51 S. E. (2d) 95, 5 A. L. R. (2d) 863, this court had the following to say:

"The language of the Constitution which prohibits special law where a general law can be made applicable, plainly implies that there are or may be cases where a special Act will best meet the exigencies of a particular case, and in no wise be promotive of those evils which result from a general and indiscriminate resort to local and special legislation. There must, however, be a substantial distinction having reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects and places excluded. The marks of distinction upon which the classification is founded must be

such, in the nature of things, as will in some reasonable degree, at least, account for or justify the restriction of the legislation. *Sansing v. Cherokee County Tourist Camp Board,* 195 S. C. 7, 10 S. E. (2d) 157; *Townsend v. Richland Co.,* 190 S. C. 270, 2 S. E. (2d) 777; *Gillespie v. Blackwell,* 164 S. C. 115, 161 S. E. 869; *Sirrine v. State,* 132 S. C. 241, 128 S. E. 172."

The case of *Webster v. Williams,* 183 S. C. 368, 191 S. E. 51, 111 A. L. R. 1348, was an action by a taxpayer to recover a penalty of one per cent on delinquent taxes imposed under an Act applicable to Orangeburg County alone. This court, in sustaining the position of the taxpayer holding such act unconstitutional, stated:

"While it is impossible to lay down any general rule by which to determine whether a special or local statute comes within the constitutional inhibition now under discussion, there can be no doubt about the applicability of the inhibition in that class of cases, such as the present, where the record discloses no peculiar local conditions requiring special treatment, and where there is in force a statute of statewide operation on the subject with which the special act seeks to deal on behalf of a particular county."

Of all the cases cited by either the appellants or respondents the case more nearly in point here is that of *Sloan v. Fair et al.,* Game and Fish Commission, 172 S. C. 485, 174 S. E. 436. In that case the Greenville County Delegation attempted by a special act to provide a method for the appointment of fish and game wardens in Greenville County different from that set forth in the general law. The act was held unconstitutional by the circuit judge on the ground that it was in contravention of Article III, Section 34, Subsection VI of the Constitution, which prohibited the enactment of local special laws to provide for the protection of game. The circuit judge, whose decree was adopted and approved by the Supreme Court, also held that the act was unconstitutional under Article III, Section 34, Subsection IX, his decree containing the following language:

"My opinion is, further, that defendants' contention that the present act may be sustained as a special provision in a general law under subdivision 10 of section 34, art. 3, is untenable.

* * *

"My opinion is, further, that the act in question is void under subdivision 9 of section 34, art. 3, in that it is a special law enacted where a general law can be made applicable.

"One of the leading cases in this state on special legislation is that of *Dean v. Spartanburg County,* 59 S. C. 110, 37 S. E. 226. The general law provided that 30 cents per day should be spent for dieting prisoners. An act was passed in 1896 providing for dieting prisoners in Spartanburg County at 20 cents per day. The circuit court held that the act was unconstitutional, which was reversed by the Supreme Court, holding that the act was special legislation and void. This case has been referred to often by our court."

Here, not only can a general law be made applicable, but a general law has been made applicable by the legislature in the enactment of the Forest Fire Protection Act of 1945. The legislature apparently concluded that there was a state-wide need for such legislation and that it was important to the protection of all of the forests of the State that it provide for a uniform method in all forty-six counties of appointing county forestry boards to work in conjunction with the State Forestry Commission in carrying out the various provisions of the state-wide forestry law. Moreover, the legislature apparently had in contemplation the possibility of vacancies on county forestry boards remaining unfilled, due in some circumstances to possible political differences within the respective counties and for this very reason, provided, by a state-wide act, for the filling of vacancies which might otherwise remain unfilled in any county due to local political differences.

The respondents here rely principally on the following cases:

*State v. Meares,* 148 S. C. 118, 145 S. E. 695; *State ex rel. Spencer v. McCaw,* 77 S. C. 351, 58 S. E. 145; *Walpole v. Wall,* 153 S. C. 106, 149 S. E. 760; *State ex rel. Sellers et al. v. Huntley,* 167 S. C. 476, 166 S. E. 637; *Moseley v. Welch,* 209 S. C. 19, 39 S. E. (2d) 133; *Brown v. Moseley,* 222 S. C. 1, 71 S. E. (2d) 591; and *Townsend v. Richland Co.,* 190 S. C. 270, 2 S. E. (2d) 777.

In our view, all of the decisions relied upon by the respondents are distinguishable from the case at bar. The first five cases cited deal with school boards, school trustees, school districts and other matters pertaining to schools. In determining whether a statute pertaining to school matters is obnoxious to subsection IX of Section 34, Article III, it is well settled that this subsection must be construed in connection with the applicable provisions of Article XI, which deal with education and various school matters. It is clear from a study of these cases and the constitutional provisions that the scope of the legislative power is much broader in dealing with school matters than is the scope in dealing with various other subjects. However, not even in school cases is the power of the General Assembly always broad enough to insure that an act pertaining to school matters is not in contravention of Article III, Section 34, Subsection IX. See *Kearse et al. v. Lancaster, Superintendent of Education et al.,* 172 S. C. 59, 172 S. E. 767.

Another distinction supporting the results in school cases is shown in the following quote from *Moseley v. Welch, supra*:

"The general school law of the State is contained in Chapter 122, Sections 5272 through 5512, of the 1942 Code, as amended. Many of these sections contain special provisions relating to various counties. This chapter is immediately followed by Chapter 122-A, Sections 5513 through 5675, which contains special legislation relating mainly to the fiscal school affairs of each of the forty-six counties of the State. As stated by the Special Referee, 'this is at least

indicative of a consistent legislative opinion that conditions in the various counties are such as to preclude uniformity of treatment in relation to the administration of school affairs.' This conclusion of the General Assembly is entitled to much respect and in doubtful cases should be followed."

In contradistinction to the school legislation, the legislature in 1945 concluded that the subject of appointment of county forestry boards should receive uniformity of treatment throughout the State, to which policy it has adhered *in toto,* until the 1961 session.

The case of *Townsend v. Richland Co., supra,* is readily distinguishable. That case dealt with an act involving the Master's office of Richland County and the case turns on the point that there was not an applicable general law and that with different situations and conditions prevailing in various counties it was at least doubtful that a general law could well be made applicable.

In *Brown v. Moseley, supra,* the special act, which was held to be constitutional, was passed for the very obvious purpose of correcting an error of long standing concerning the term of office of the Sheriff of Kershaw County. This court said:

"The propriety of special provision of law under the facts of this case appears to be so unmistakable that we think it unnecessary to review the decided cases thereabout * * *."

The respondents appealed from the order of the circuit judge settling the case because his Honor did not include in the case certain affidavits and exhibits proffered by the respondents on the hearing of this cause, all of which are printed in the appendix. In his order, the circuit judge said that he was excluding them for the reason that he did not consider them in arriving at a decision of the case.

The exceptions of the respondents in connection with their appeal have not been expressly argued in their printed briefs and, therefore, may be considered by this court as abandoned. *Echols v. Seaboard Air Line Ry. Co.,* 174 S. C. 537, 178 S. E. 139.

There is, of course, abundant authority for the proposition that this court should not consider issues not passed upon by the circuit judge. However, since the factual matters shown in the appendix are urged by the respondents in support of their additional sustaining grounds urged upon this court and since we deem it in the public interest that this controversy be brought to an end without needless further litigation, we shall comment briefly on the contents of the appendix.

The affidavits and exhibits, not considered by the circuit judge, show in some detail the political differences of opinion existing in Lee County; tend to show that in one or more instances no formal meetings of the Lee County Forestry Board were held for the purpose of determining who the board members would recommend to the State Forestry Commission to fill a particular vacancy; and served to give this court a little clearer picture of the chronology and details of the controversy. They do not show any uncertainty or doubt as to the respective terms of office of the appellants; do not show that the Lee County Forestry Board is self-perpetuating as contended by the respondents; do not show that there has been any neglect of duty on the part of the appellants, and fail to show any need or justification for the present Act or that the general law is not and cannot be made applicable in this specific case.

If, in the judgment of the legislature, the situation as it exists in Lee County under the general law should be changed, we see no reason why the legislature could not pass a state-wide Act which would be applicable to Lee County as well as all other counties wherein a similar situation might, perchance, arise. This, however, the legislature has not yet done.

There being, in effect, an applicable general law and there being no showing in the present record before us of any sufficient distinction, need or justification for this special legislation, we conclude that it is clear, beyond any reason-

able doubt, that the Act here is in violation of Article III, Section 34, Subsection IX, and is not a special provision in a general law within the purview of Subsection X, as contended by the respondents.

Therefore, the order of the circuit judge is reversed and the cause remanded to the circuit court of Lee County for such further proceedings, not inconsistent with this opinion, as the parties may deem necessary or advisable.

TAYLOR, C. J., and Moss and LEWIS, JJ., concur.