20030

Thomas J. THORNE, as Chairman of the Charleston County Board of Assessment Control, et al., Plaintiffs-Respondents, v. Richard E. SEABROOK, Jr., as Chairman of Charleston County Council, et al., Defendants-Respondents, and BUCKNER LAND CORPORATION, a South Carolina Corporation, et al., Defendants-Appellants.

(216 S. E. (2d) 177)

*Messrs. Young, Clement & Rivers,* of Charleston, *for Defendants-Appellants B-C-D Company and Physicians and Surgeons Building Company,*

*Messrs. Shimel, Ackerman, Theos, Spar & Kaynard,* of Charleston, *for Defendant-Appellant Buckner Land Corpo-ration,*

*Messrs. Buist, Moore, Smythe & McGee, Morris D. Rosen,* and *Ben Scott Whaley,* of Charleston, *for Defendant-Respondents,*

June 10, 1975.

BUSSEY, Justice:

This is a declaratory judgment proceeding instituted for the purpose of obtaining a declaration as to whether or not Act No. 415 of the 1973 Acts of the General Assembly (58 Stat. at Large, p. 723) is constitutional. The plaintiffs are those officials charged with the responsibility for the assessment and collection of real property taxes in Charleston County. The defendants include some governmental entities in Charleston County that collect and spend tax money and some taxpayers of Charleston County who are affected by the Act in controversy.

Such Act provides, *inter alia,* that in Charleston County every new building, addition, renovation or other improvement to real property shall be returned for taxation, and shall be taxable, as of the first day of the calendar month after it is first occupied. It thus provides for a pro rata taxation of improvements to realty in Charleston County during the year of initial occupancy. The plaintiffs and the governmental defendants assert that the Act is constitutional, while the taxpaying defendants assert that it is unconstitutional. The taxpaying defendants appeal from an order of the circuit court granting a motion of the plaintiffs for summary judgment and holding the Act constitutional.

Section 65-1620 of the 1962 Code, as amended, is statewide in its scope and applies to all counties and to all land and new structures erected thereon. It reads as follows:

"Returns of new improvements.—Each owner of land on which any new structures have been erected which shall not have been appraised for taxation shall list them for taxation with the county auditor of the county in which they may be situate on or before the first day of March next after they shall become subject to taxation. No new structure shall be listed or assessed until it is completed and fit for the use for which it is intended."

The Act, approved and effective July 10, 1973, undertakes to apply a different rule for returning property in Charleston County. We quote the relevant part:

"Section 65-1620.4. (1) Notwithstanding the provisions of Section 65-1620, in Charleston County every building, addition, renovation or other improvement to real property shall be returned for taxation to the county auditor, and shall be taxable, as of the first day of the calendar month after it is first occupied."

The effect of the Act is to require landowners in Charleston County to return for taxes the improvements on their land on the first day of the month following occupancy, and pay taxes thereon for a fractional part of the year. Other

landowners in South Carolina under similar circumstances are not required to return improvements and pay taxes on them until the following calendar year. Under other sections of the code property becomes subject to taxation at the beginning of the fiscal year in which the tax is levied. See, *inter alia,* sections 65-2701 and 65-2702.

The appellants assert that the Act is violative of numerous constitutional provisions but in our view of the matter it is necessary to consider only one challenge to the legislation. We are convinced that the Act is clearly violative of Article 3, section 34 (IX) of the South Carolina Constitution which in pertinent part reads as follows: "In all other cases, where a general law can be made applicable, no special law shall be enacted: * * *."

The provisions of section 65-1620 of the code make it clear not only that a general law can be made applicable but that the General Assembly has enacted a general law providing when new structures erected upon land in South Carolina shall be listed or assessed for taxation. The lower court in concluding that the Act was not in violation of Article 3, section 34 (IX) relied upon the cases of *Townsend v. Richland County,* 190 S. C. 270, 2 S. E. (2d) 777 and *Mills Mill v. Hawkins,* 232 S. C. 515, 103 S. E. (2d) 14 (1957). The respondents in their brief additionally rely on the case of *Morris v. Scott,* 258 S. C. 435, 189 S. E. (2d) 28. We do not regard any of these authorities as being in point or particularly helpful. The authorities relied upon by the respondents support the proposition that special legislation relating to the fiscal affairs of a county is permissible and it is argued that the Act under attack here relates only to the fiscal affairs of Charleston County and is therefore constitutional.

It is, of course, true that the Act, to an extent, has an effect upon the fiscal affairs of the county but it does not, we think, relate only to such fiscal affairs. The respondents in resisting attack on another constitutional ground argue that the Charleston County Board of Assess-

ment Control in assessing property for taxes is not performing, strictly speaking, a function of local government but is performing a state function instead. It is pointed out that but for the one ex officio member, members of the Board are appointed by the Governor. See code sections 65-305 *et seq.* While its actual functions are restricted to the area of Charleston County it is pointed out that the Board is independent of County Council, Act No. 753 of the Acts of 1966 (54 Stat. at Large, p. 2031). Whatever the nature of the function performed by it, such has an effect upon governmental entities other than the county, and hence the Act does not relate only to the fiscal affairs of Charleston County.

Article 10, section 1, provides in pertinent part as follows:

"The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property, real, personal and possessory, * * *."

Article 10, section 13, is as follows:

"One assessment for all taxes.—The General Assembly shall provide for the assessment of all property for taxation; and State, county, township, school, municipal and all other taxes shall be levied on the same assessment which shall be that made for State taxes; and the taxes for the subdivisions of the State shall be levied and collected by the respective fiscal authorities thereof."

The quoted provisions of the Constitution are persuasive that the assessment of property for taxation is a function of the state government rather than one of local government.

In principle, the instant case cannot, we think, be distinguished from the cases of *Salley v. McCoy,* 182 S. C. 249, 189 S. E. 196, and *Webster v. Williams,* 183 S. C. 368, 191 S. E. 51. In *Salley* the court held unconstitutional an act applicable only to Orangeburg County, which contrary to the general law on the subject sought to deprive the Treasurer of Orangeburg County of fees for the issuance of tax executions to which he was entitled under the general

law. In *Webster,* another Orangeburg County case, the court held unconstitutional an act which provided, contrary to the general law on the subject, an additional penalty for late payment of taxes.

"As was said in *Thomas v. Macklen,* 186 S. C. 290, 195 S. E. 539, 542, 'If it must be assumed, merely because the statute has been enacted, that the Legislature had information showing that there was a necessity for such legislation with reference to the particular locality, it would follow that all legislation local in form must be upheld, however general the nature and subject-matter of such legislation might be. Such a rule of construction would be contrary to the mandatory character of the constitutional provisions we are considering.' "

See also *Shillito v. City of Spartanburg,* 214 S. C. 11, 51 S. E. (2d) 95.

Being convinced that the Act is clearly unconstitutional as being violative of Article 3, Section 34(IX), there is no occasion or reason for this Court to pass upon the contention that it is also violative of Article 8, Section 7 of the Constitution as recently amended. Hence, under the settled principle that a court should not pass upon a constitutional issue unless doing so is necessary to a decision, we expressly refrain from any holding as to the applicability, if any, of Article 8, section 7 to the Act here under attack. The Act, however, being clearly violative of Article 3, Section 34(IX), the judgment of the court below is hereby,

Reversed.

LEWIS and NESS, JJ., concur.

Moss, C. J., and LITTLEJOHN, J., concur in separate opinion.

LITTLEJOHN, Justice:

Heretofore the opinion which follows was proposed to the Court as the proper disposition of the issues before us.

A majority of the Court having now elected to reverse the case on other grounds, I file my proposed opinion in the form of a concurring opinion, setting forth my views as to the more appropriate disposition of the case.

The plaintiffs (respondents) are the officials of Charleston County charged with the responsibility of assessing and collecting real property taxes. This action was initiated pursuant to the Uniform Declaratory Judgments Act, § 10-2001 *et seq.,* Code of Laws of South Carolina (1962), for the purpose of determining the constitutionality of Act No. 415 of 1973 of the General Assembly (The Act).

The defendants in this action are a group of Charleston County governmental entities that collect and spend the tax money, and a group of real estate taxpayers of Charleston County who are affected by the Act. The governmental agency defendants assert that the Act is constitutional; the taxpayers defendants maintain that the Act is unconstitutional.

The plaintiffs, by motion for summary judgment, prayed that the trial court issue an order declaring the Act to be constitutional. Upon a hearing of the motion the plaintiffs submitted an affidavit of the Charleston County Tax Assessor which indicated that for the year 1973 the number of affected taxpayers was approximately 1,950, and that the amount of taxes involved was approximately $226,000.00. The defendant taxpayers submitted a letter from the Chairman of the Board of Assessment Control, which stated that the expected income from the Act had not been budgeted by the Charleston County authorities.

On April 25, 1974, Judge John Grimball granted the plaintiffs' motion for summary judgment and upheld the constitutionality of the Act. The defendant taxpayers have appealed and seek to have the Act declared unconstitutional by this Court.

The defendant taxpayers assert that the Act is unconstitutional in that it contravenes five provisions of the South Carolina Constitution:

"(1) Article VIII, Sections 1 and 7;

"(2) Article III, Section 34;

"(3) Article III, Section 17;

"(4) Article X, Section 1; and

"(5) Article I, Section 3."

Section 65-1620 of the 1962 Code, as amended, is statewide in its scope and applies to all counties and to all land and new structures erected thereon. It reads as folows:

"Returns of new improvements.—Each owner of land on which any new structures have been erected which shall not have been appraised for taxation shall list them for taxation with the county auditor of the county in which they may be situate on or before the first day of March next after they shall become subject to taxation. No new structure shall be listed or assessed until it is completed and fit for the use for which it is intended."

The Act, approved and effective July 10, 1973, undertakes to apply a different rule for returning property in Charleston County. We quote the relevant part:

"Section 65-1620.4. (1) Notwithstanding the provisions of Section 65-1620, in Charleston County every building, addition, renovation or other improvement to real property shall be returned for taxation to the county auditor, and shall be taxable, as of the first day of the calendar month after it is first occupied."

The effect of the Act is to require landowners in Charleston County to return for taxes the improvements on their land on the first day of the month following occupancy, and pay taxes thereon for a fractional part of the year. Other landowners in South Carolina under similar circumstances are not required to return improvements and pay taxes on them until the following calendar year.

On March 7, 1973, Article VIII of the South Carolina Constitution was ratified. It relates to local government. Section 7 thereof reads as follows:

"§ 7. Organization, powers, duties, etc., of counties; special laws prohibited.—The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided. Alternate forms of government, not to exceed five, shall be established. *No laws for a specific county shall be enacted and no county shall be exempted from the general laws or laws applicable to the selected alternative form of government."* (Emphasis added).

We are called upon to decide whether The Act of July 10, 1973, is obnoxious to this constitutional amendment.

New Article VIII reflects a serious effort on the part of the electorate, who voted the amendment, and the members of the General Assembly, who proposed and ratified it, to restore local government to the county level.

State constitutions are not grants of power to the General Assembly but are restrictions upon what would otherwise be plenary power; cases collected, 6 South Carolina Digest, State Constitutions, Key No. 26 (1952 Cum. Supp. 1973).

Article VIII prohibits the General Assembly from enacting "laws for a specific county." It is clearly intended that home rule be given to the counties and that county government function at the county seat rather than at the State Capitol.

Respondents argue, and the lower court held, that the Act is without the purview of the constitutional provision because the assessment of property in Charleston County was taken out of the hands of Charleston County Council by Act No. 753 of 1967 and vested in the Board of Assess-

ment Control. The lower court further reasoned that "The Board of Assessment Control is a separate and independent entity from the County government. . . ."

We think that the lower court erred in so ruling. Clearly Act No. 415 of 1973 is a law for a specific county; it is the type of legislation forbidden by new Article VIII.

The lower court was also of the opinion that the Act should be held constitutional, notwithstanding Article VIII, because of Article X, Section 1, which provides as follows:

"The General Assembly shall provide by law for a uniform and equal rate of assessment in taxation, and shall prescribe regulations to secure a just valuation for taxation of all property, real, personal and possessory . . ."

The short answer to this contention is that the Act simply does not do what Article X, Section 1 mandates.

We are not, of course, concerned with the wisdom of the Act. Concededly it has much appeal. If the result desired is to be pursued for Charleston County, it should be sought at the local level in a manner not prohibited by the constitution.

By refraining from ruling upon the contention that the Act violates other provisions of our constitution, we do not intimate that these objections are without merit. We simply hold that the Act is in conflict with new Article VIII, Section 7, and is accordingly void.

Although the brothers of the writer did not agree with all that was said in the case of *Knight, et al. v. Salisbury, et al.*, 262 S. C. 565, 206 S. E. (2d) 875 (1974), reference is made thereto for further discussion of the effect of Article VIII.

Moss, C. J., concurs.