533 S.E.2d 350

Jennifer J. **FALK**, individually; **Andrew Yoshi Falk**, by and through his Guardian ad Litem, **Jennifer J. Falk**; and **Cara Cydney Jennings Murasawa**, by and through her Guardian ad Litem, **Jennifer J. Falk**, Appellants,

v.

Nancy **SADLER**, in her capacity as Guardian ad Litem for Andrew Yoshi Falk and Cara Cydney Jennings Murasawa, Respondent.

No. 3202.

Court of Appeals of South Carolina.

Heard March 8, 2000.

Decided June 19, 2000.

William E. Bird, of Bird Law Firm, of Columbia, for appellant.

R. Davis Howser and Andrew E. Haselden, both of Howser, Newman & Besley, of Columbia, for respondent.

MOREHEAD, Acting Judge:

Jennifer Falk brought this action against attorney Nancy Sadler on behalf of herself and her two minor children. Falk alleged Sadler acted negligently, breached fiduciary duties, and maliciously used or abused the legal process during the time Sadler served as guardian ad litem for Falk's children. The trial court granted Sadler's motion for a judgment on the pleadings under Rule 12(c), SCRCP, finding Sadler was entitled to absolute quasi-judicial immunity. Falk appeals. We reverse and remand for further proceedings.

## FACTS

Falk married Yoshihisa Murasawa in Los Gatos, California on May 19, 1987. The couple adopted a son, Andrew Yoshi Murasawa,[1] in New Jersey on December 9, 1994. Falk then moved to Arkansas with Andrew for the purpose of adopting Murasawa's biological daughter, Cara Cydney Jennings Murasawa, who was born to a surrogate mother on March 6, 1995. Falk adopted Cara, with Murasawa's consent, at a final adoption hearing on March 28, 1995.

On March 29, 1995, Falk and Murasawa separated. Murasawa left Arkansas to return to Tokyo, Japan. Falk moved with both children to Beaufort, South Carolina.

---

1. Andrew's name was later legally changed to Andrew Yoshi Falk.

On April 10, 1995, Falk filed an action in the Beaufort County family court for separate support and maintenance. Falk sought temporary and permanent custody of both children and an equitable division of the marital property. In her pleadings, she asked the family court to appoint Sadler as the guardian ad litem for the children.

Murasawa answered and joined in the request that the family court appoint Sadler as the guardian ad litem. Murasawa alleged that at the time he consented to Falk's adoption of Cara, Falk represented to him that she and the children would return to Tokyo on or about April 12, 1995. Murasawa alleged Falk "hid her secret plan and intention of separating from [him] in order to induce [him] into consenting to [Falk's] adoption of Cara Murasawa." Murasawa subsequently filed an action in Arkansas seeking to nullify Falk's adoption of Cara.

On October 6, 1995, the Beaufort County family court filed a pendente lite order of custody awarding Murasawa temporary custody of Cara and awarding Falk temporary custody of Andrew. The order required Murasawa to pay $5,000 per month in temporary support for Falk and Andrew. The order allowed Murasawa to return to Tokyo with Cara if Murasawa posted a $1,000,000 letter of credit with the court. The order also noted that the guardian ad litem, Sadler, had recommended that the court place pendente lite custody of Cara with Murasawa and allow him to return to Tokyo with Cara upon posting the letter of credit.

The family court filed a decree of separate maintenance and support on October 10, 1996, which approved and incorporated a property and separation agreement signed by Falk and Murasawa on August 16, 1996. The property and separation agreement stated Murasawa would have permanent custody of Cara and Falk would have permanent custody of Andrew.

Falk filed this action against Sadler "in her capacity as Guardian ad Litem" on August 25, 1997, asserting causes of action for negligence, breach of fiduciary duty, and malicious use or abuse of the legal process. Falk claimed Sadler served as a privately paid guardian ad litem and was not appointed by the family court. In her complaint, Falk initially stated "[a]ll allegations of misconduct attributed to Sadler occurred while

she was acting within the scope of her contract of employment as Guardian ad Litem for the two (2) minor children...." However, Falk further alleged Sadler exceeded the scope of her guardian ad litem duties by advocating Murasawa's interests during the separation proceedings and by attempting to negotiate spousal support for Falk. Falk also alleged Sadler provided legal advice to Murasawa with regard to the Arkansas action to nullify Falk's adoption of Cara.

Sadler moved for a judgment on the pleadings under Rule 12(c), SCRCP, asserting, among other things, she was entitled to immunity for her alleged acts. The trial court granted Sadler's motion, ruling Sadler was entitled to absolute quasi-judicial immunity on all causes of action under *Fleming v. Asbill*, 326 S.C. 49, 483 S.E.2d 751 (1997). The court then dismissed the action with prejudice. This appeal follows.

## ISSUES ON APPEAL

1. Did the trial court err in granting blanket immunity to the guardian ad litem and dismissing the action against her?

2. Did the trial court err by extending immunity to a privately paid, non-court-appointed guardian ad litem?

3. Did the trial court err in applying the defense of immunity as described in the *Fleming* opinion retrospectively?

## STANDARD OF REVIEW

 Any party may move for a judgment on the pleadings under Rule 12(c), SCRCP. When considering such motion, the court must regard all properly pleaded factual allegations as admitted. *Russell v. City of Columbia*, 305 S.C. 86, 406 S.E.2d 338 (1991). On review of the motion, the court may not consider matters outside the pleadings. *Firemen's Ins. Co. v. Cincinnati Ins. Co.*, 302 S.C. 234, 394 S.E.2d 855 (Ct.App.1990).

A judgment on the pleadings against the plaintiff is not proper if there is an issue of fact raised by the complaint which, if resolved in favor of the plaintiff, would entitle him to judgment.... When a fact is well pleaded, any inference

of law or conclusions of fact that may properly arise there-
from are to be regarded as embraced in the averment.
Moreover, a complaint is sufficient if it states any cause of
action or it appears that the plaintiff is entitled to any relief
whatsoever. Our courts have held that pleadings in a case
should be construed liberally so that substantial justice is
done between the parties.

*Russell,* 305 S.C. at 89, 406 S.E.2d at 339 (citations omitted).
Furthermore, "a judgment on the pleadings is considered to
be a drastic procedure by our courts." *Id.*

## DISCUSSION

### I.

█ Falk argues the trial court should not have granted
Sadler blanket immunity under *Fleming* on the basis of her
mere status as a guardian ad litem. Falk contends some of
Sadler's alleged actions exceeded the scope of her duties as
guardian ad litem and thus are not protected by immunity
under *Fleming.*

In *Fleming,* our supreme court held individuals appointed
as guardians ad litem in private custody proceedings are
entitled to absolute quasi-judicial immunity for acts performed
within the scope of their appointment. *Fleming,* 326 S.C. at
57, 483 S.E.2d at 755–56. The court noted the role of a
guardian ad litem is to serve as a representative of the court
and to assist it in protecting the best interests of the child.
*Id.* at 54–55, 483 S.E.2d at 754. The court recognized that
immunity for acts performed within the scope of a guardian ad
litem's appointment is necessary to protect the guardian from
the threat of lawsuits by disgruntled parents. *Id.* at 57, 483
S.E.2d at 755.

The *Fleming* court noted that, under a grant of absolute
quasi-judicial immunity, a guardian ad litem in a private
custody dispute could not be found liable for acts of gross
negligence or even recklessness in the performance of her
duties. *Id.* at 56, 483 S.E.2d at 755. However, the court
explained certain safeguards exist along with the grant of
immunity:

First, *the immunity would not protect guardians ad litem for actions beyond the scope of their duties.* Thus, for example, if a guardian abuses a child, she would be liable because her actions would fall outside her duties as guardian. Second, the accountability of the guardian ad litem is preserved in various ways. For example, the opposing party may cross-examine the guardian ad litem and any witnesses whose testimony form the basis of the guardian's recommendation. This accountability is further ensured through: 1) the appointing court's oversight of the guardian ad litem's discharge of duties; 2) the parents' ability to move the court for termination of the guardian; 3) the court's prerogative to reject the recommendations of the guardian; and 4) judicial review of family court decisions relying on a guardian's recommendations.

*Id.* at 56–57, 483 S.E.2d at 755 (citations omitted) (emphasis added).

 Thus, the immunity available to guardians ad litem under *Fleming* is not a blanket immunity for any and all actions taken by the guardian. Rather, the guardian remains liable for actions beyond the scope of her duties. It is the nature of the acts, not simply the status of the defendant as a guardian ad litem, that determines the availability of immunity for the challenged acts and the extent of protection afforded by that immunity. *See Collins v. Tabet,* 111 N.M. 391, 806 P.2d 40, 52 (1991) ("[A] limited factual inquiry is necessary to determine the nature of [the guardian's] appointment and the extent to which he functioned within the scope of that appointment.")

 In this case, it may well be that Falk is simply unhappy with Sadler's recommendation that the court allow Murasawa to obtain temporary custody of Cara and return with her to Tokyo. A recommendation by the guardian ad litem, no matter how disagreeable to one of the parties, will not sustain an action against the guardian of this sort. *See Myers v. Morris,* 810 F.2d 1437, 1466 (8th Cir.1987) (guardians ad litem are absolutely immune from liability in actions based on their function of testifying before or making recommendations to the family court), *cited with approval in Fleming,* 326 S.C. at 55–56 n. 2, 483 S.E.2d at 755 n. 2.

However, Falk alleges in her complaint that Sadler exceeded the scope of her guardian ad litem duties in several ways. In particular, Falk alleges that Sadler: (1) "exceed[ed] the scope of her Guardian ad Litem duties and responsibilities by advocating, representing or attempting to represent the interests of Falk and Murasawa in issues involving the legal separation of Falk and Murasawa;" (2) "exceed[ed] the scope of her duties and responsibilities by interfering with issues between Falk and Murasawa regarding spousal support;" (3) committed misconduct "[i]n attempting to negotiate spousal support for Falk without authorization in exchange for physical separation of her minor clients from one another;" (4) committed misconduct "[i]n advocating and acting under an inherent conflict of interest in the performance of legal representation of the best interest of her clients, the minor children;" and (5) committed misconduct "[i]n undertaking the dual role of Guardian ad Litem and providing legal advice to or representation of Murasawa as to legal matters between Falk and Murasawa."

Further, Falk alleges Sadler "counselled with, encouraged, advised, aided and/or abetted the malicious use or abuse of legal process" because she: (1) "interfered with the service of federal process in an action to stay the departure of [Cara] from United States jurisdiction"; (2) "withheld information as to the whereabouts of Murasawa to hinder service and aid in his departure from the United States with her minor client, Cara"; and (3) "gave or participated in the giving of legal advise [sic] to Murasawa on avoiding service of process of the federal court action that was designed to preserve jurisdiction over the husband as well as Sadler's client, the minor child, Cara."

Despite these allegations that Sadler exceeded the scope of her guardian ad litem duties, Falk's complaint begins by stating that "[a]ll allegations of misconduct attributed to Sadler occurred while she was acting within the scope of her contract of employment as Guardian ad Litem for the two (2) minor children and such misconduct was neither authorized nor ratified by Falk." We find this allegation to be an ambiguous statement subject to different interpretations. One interpretation of this statement is that all acts complained of in the pleadings were within the scope of Sadler's duties as guardian

ad litem. Under this interpretation, the statement clearly conflicts with some of the other allegations which assert Sadler committed wrongful acts exceeding the scope of her duties as guardian. However, a second interpretation of this statement is that Sadler was under contract to act as a guardian ad litem at the time she committed her alleged misconduct. This interpretation does not conflict with the remaining allegations in the complaint. Thus, on its face, the complaint contains ambiguities and raises issues of fact.

At this point in the proceedings, we find the grant of a judgment on the pleadings, before discovery has been fully completed, is premature. Falk's complaint contains several allegations which, if true, show Sadler acted outside the scope of her duties as guardian ad litem and is thus not entitled to immunity under *Fleming*. *See Fleming*, 326 S.C. at 55, 483 S.E.2d at 754 ("[A] present-day guardian ad litem in a private custody dispute functions as a representative of the court appointed to assist it in protecting the best interests of the ward. The guardian accomplishes this responsibility by ascertaining the best interests of the ward and advocating to the court the ward's best interest.") (citations omitted).

We make no determination on the merits of this action and merely remand for further proceedings. This result does not preclude a later determination that summary judgment or a directed verdict may be appropriate, as it does not establish the law of the case or have the effect of striking any applicable defense. *Cf. Ballenger v. Bowen*, 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994) ("The denial of summary judgment does not establish the law of the case, and the issues raised in the motion may be raised again later in the proceedings by a motion to reconsider the summary judgment motion or by a motion for a directed verdict.").

## II.

██ Falk also argues absolute quasi-judicial immunity should not extend to Sadler for any of her acts because Sadler was a privately hired, non-court-appointed guardian ad litem. However, we find the lack of a court order specifically appointing Sadler as guardian ad litem in this case to be immaterial. Falk and Murasawa asked the family court to appoint Sadler

as guardian ad litem in their pleadings. The family court specifically recognized Sadler as the guardian ad litem and noted her custody recommendation in its pendente lite order of custody. The family court also issued an order for payment of the guardian ad litem's fees. In its order, the court stated "the Family Court has exclusive jurisdiction to appoint Guardians ad Litems [sic] and determine their compensation and to assess responsibility for payment of said compensation. South Carolina Code Annotated Section 20-7-420(37). Wherefore, it is ordered, adjudged and decreed: 1. That Defendant [Murasawa] shall pay the Guardian ad Litem's bill...." All of these documents were incorporated into Sadler's pleadings in the present action. Under these circumstances, we believe the lack of a court order of appointment should not preclude Sadler from claiming absolute quasi-judicial immunity for any actions which were taken within the scope of her duties as guardian ad litem.

## III.

To the extent Falk argues the *Fleming* decision's recognition of immunity is inapplicable to the current action, we find this assertion to be without merit. *Fleming* was published on March 31, 1997, and concerns services of a guardian ad litem rendered from 1986 to 1989. The current action was filed on August 25, 1997, and concerns events which occurred in 1995.

Judicial decisions which create new substantive rights must be given prospective effect only, while decisions which create new remedies vindicating existing rights may be given retrospective application. *Toth v. Square D Co.*, 298 S.C. 6, 377 S.E.2d 584 (1989). Decisions which create liability where none previously existed must be given prospective application. *Id.* at 8, 377 S.E.2d at 585.

Abrogation of immunity has the effect of creating liability where none previously existed, and thus its application would be prospective. *See Hupman v. Erskine College*, 281 S.C. 43, 314 S.E.2d 314 (1984) (holding the abrogation of charitable immunity applies prospectively only because it creates liability where formerly none existed).

In contrast, the court below held "the recognition of quasi-judicial immunity in *Fleming* does not create a new right or defense, but rather is the mere recognition of the state of the law as part of the existing policy of this State as reflected by the reality of the times." We agree and see no reason to bar the *Fleming* decision's application here.

For the foregoing reasons, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

HEARN, C.J., and STILWELL, J., concur.