748 S.E.2d 230

The HOME BUILDERS ASSOCIATION OF SOUTH
CAROLINA and the Charleston–Trident Home
Builders Association, Inc., Appellants,

v.

SCHOOL DISTRICT NO. 2 OF DORCHESTER COUNTY
and the Board of Trustees for Dorchester School
District No. 2, Respondents.

Appellate Case No. 2011–195208.

No. 27315.

Supreme Court of South Carolina.

Heard Feb. 6, 2013.
Decided Sept. 11, 2013.

Kittredge, J., concurred in the result only.

Toal, C.J., filed dissenting opinion.

Frederick A. Gertz and Phong Thi Van Nguyen, both of Gertz & Moore, LLP, of Columbia, for Appellants.

Sarah Patrick Spruill, of Haynsworth Sinkler Boyd, PA, of Greenville, and Charlton De Saussure, Jr. of Haynsworth Sinkler Boyd, PA, of Charleston, for Respondents.

Justice PLEICONES.

This is an appeal from an order granting respondents' motion for a judgment on the pleadings under Rule 12(c), SCRCP, and dismissing appellants' complaint. Because we find issues of fact raised by the complaint that must be resolved before the constitutionality of 2009 Act No. 99(Act) can be determined, we reverse and remand for further proceedings.

The Act permits respondent School District to impose an impact fee to be paid by developers on "new residential dwelling units constructed within the school district." Respondent Trustees adopted the impact fee by resolution effective June 23, 2009. Appellants, each an organization of home builders, brought this declaratory judgment suit seeking injunctive relief against respondents challenging the constitutionality of the Act under provisions of the state constitution

requiring statewide uniformity (S.C. Const. art. VIII, § 14(6)) [1] and limiting special legislation (S.C. Const. art. III, § 34).

■ Respondents moved for a judgment on the pleadings under Rule 12(c). A judgment on the pleadings shall be granted "where there is no issue of fact raised by the complaint that would entitle the plaintiff to judgment if resolved in plaintiff's favor." *Sapp v. Ford Motor Co.*, 386 S.C. 143, 687 S.E.2d 47 (2009) citing *Russell v. City of Columbia*, 305 S.C. 86, 406 S.E.2d 338 (1991). A judgment on the pleadings is "a drastic procedure." *Russell, supra*, cited in *Falk v. Sadler*, 341 S.C. 281, 533 S.E.2d 350 (Ct.App.2000). The circuit judge granted the motion.[2]

■ South Carolina Const. art. III, § 34(IX), provides that "where a general law can be made applicable, no special law shall be enacted." Legislation regarding education is not exempt from this requirement even though art. XI, § 3, gives the General Assembly more discretion with respect to legislation impacting a school district than it has in other areas. *Charleston County School Dist. v. Harrell*, 393 S.C. 552, 558, 713 S.E.2d 604, 607–608 (2011) (internal citation omitted). *Charleston County* holds that a constitutional challenge predicated on a special legislation claim is analogous to one based upon equal protection. Special legislation is not unconstitutional if there is "a substantial distinction having reference to

---

1. Appellants do not rely on this ground on appeal.

2. In fact, the court went further and actually declared the Act constitutional. The dissent falls prey to this same error, and in so doing far exceeds the scope of the matter before us. Among other things, the dissent recaps two publications primarily authored by Professor Ulbrich, cites other school district legislation, and improperly cites to York County ordinances. *See Harkins v. Greenville County*, 340 S.C. 606, 533 S.E.2d 886 (2000) (reiterating well-settled rule that appellate court cannot take judicial notice of local ordinance). In its zeal to reach the merits of the Act, the dissent writes extensively on matters which are not in dispute, including the General Assembly's authority and responsibility to enact special legislation to benefit public education. In so doing, the dissent loses sight of the sole issue before the Court in this appeal: does the complaint raise any issue of fact which, if resolved in appellants' favor, would entitle them to a judgment. Neither the wisdom nor the constitutionality of the 2009 Act is at issue at this juncture.

the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects and places excluded.... In other words, the General Assembly must have a logical basis and a sound reason for resorting to special legislation." *Horry County v. Horry County Higher Educ. Comm'n,* 306 S.C. 416, 419, 412 S.E.2d 421, 423 (1991) (citations omitted) cited with approval in *Charleston County,* 393 S.C. at 558–559, 713 S.E.2d at 608.

The Act itself is silent on any unique or special funding needs of respondent School District.[3] Further, the complaint alleges the Act applies only to respondent School District, and that the district's funding needs are no different from many other districts in the state, that it does not have unique funding requirements, and that other similarly situated school districts are faced with the same issues. It specifically alleges:

> The Act's application to a single school district without any peculiar or unique conditions, resulting in special treatment, violates the provisions of the South Carolina Constitution, in particular art. III, § 34 (limiting "special legislation") and art. VIII, § 14(6) (requiring statewide uniformity).

The complaint thus alleges facts which, if proven, would render the Act unconstitutional special legislation.

The circuit court and respondents rely on a single sentence found in *Bradley v. Cherokee School Dist. No. One,* 322 S.C. 181, 470 S.E.2d 570 (1996): "A law that is special only in the sense that it imposes a lawful tax limited in application and incidence to persons or property within a certain school district does not contravene the provisions of Article III, § 34(IX)." Here, we are concerned with an impact fee, not a tax, and one that is placed on only some persons and not others.[4] Moreover, since *Bradley* was decided, we have clari-

---

3. The order finds the impact fee warranted by "The public education improvements necessitated by rapid population growth...." This finding is taken from the resolution, however, not the Act, and thus does not represent a basis or reason for the legislature to have resorted to the Act. *Charleston County, supra.*

4. We now overrule *Bradley* to the extent it relies upon *Hay v. Leonard,* 212 S.C. 81, 46 S.E.2d 653 (1948). *Hay,* like *McElveen v. Stokes,* 240 S.C. 1, 124 S.E.2d 592 (1962) and the other pre–1973 cases relied upon

fied that all challenges to education-related special legislation are subject to the test set forth in *Kizer v. Clark*, 360 S.C. 86, 600 S.E.2d 529 (2004). *Charleston County, supra.*

We find the complaint alleges facts which, if resolved in appellants' favor, would result in a declaration that the Act is unconstitutional. The order granting respondents' Rule 12(c) motion is therefore

**REVERSED.**

BEATTY and HEARN, JJ., concur.

KITTREDGE, J., concurring in result only.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL.

Respectfully, I dissent. I would affirm the circuit court's grant of respondents' motion for a judgment on the pleadings under Rule 12(c), SCRCP, because, in my assessment, appellants' complaint does not raise an issue of fact that would entitle appellants to judgment if resolved in their favor. The majority finds appellants' allegation that respondent School District does not have unique funding needs, if proven, would render the Act unconstitutional special legislation. In doing so, it is my opinion the majority improperly applies the constitutional prohibition of special legislation to education-related legislation.

Article III, section 34(IX) of the South Carolina Constitution prohibits the General Assembly from enacting local laws "where a general law can be made applicable." S.C. Const. art. III, § 34(IX). However, "special legislation is not uncon-

by the dissent, were decided under the pre-Home Rule state constitution. Prior to 1973, article XI of the constitution contained the education-related provisions. Article XI, § 6 provided in its last sentence "Any school district may by the authority of the General Assembly levy an additional tax for the support of schools." In other words, at the time *Hay* was decided, it was impossible for a school district tax act to constitute an unlawful special law under art. III, § 34(IX) in light of the specific authorization of art. XI, § 6. This article was repealed by 1973 Act No. 42, and § 6 was not reenacted elsewhere in the post-Home Rule constitution. *Bradley* erred in relying on *Hay*, decided under the pre–1973 version of S.C. Const. art. XI, § 6, and the dissent would perpetuate this error.

stitutional where there is 'a substantial distinction having reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects and places excluded.' " *Charleston Cnty. Sch. Dist. v. Harrell,* 393 S.C. 552, 558–59, 713 S.E.2d 604, 608 (2011) (quoting *Horry Cnty. v. Horry Cnty. Higher Educ. Comm'n,* 306 S.C. 416, 419, 412 S.E.2d 421, 423 (1991)). Thus, "the General Assembly must have a logical basis and sound reason for resorting to special legislation." *Id.* The purpose of restricting local or special legislation is to promote uniformity in state laws where possible, and to avoid duplicative or conflicting laws on the same subject. *Med. Soc'y of S.C. v. MUSC,* 334 S.C. 270, 279, 513 S.E.2d 352, 357 (1999).

This Court is deferential to the General Assembly when determining the constitutionality of a local law and will not declare it unconstitutional "unless its repugnance to the Constitution is clear beyond a reasonable doubt" or "there has been a clear and palpable abuse of legislative discretion." *Id.* at 279, 513 S.E.2d at 357; *Sirrine v. State,* 132 S.C. 241, 248, 128 S.E. 172, 174 (1925), *overruled on other grounds, McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985). Even greater deference is given when evaluating local laws related to school matters. *See McElveen v. Stokes,* 240 S.C. 1, 10, 124 S.E.2d 592, 596 (1962). The Court has explained that in evaluating local legislation involving public education, the constitutional restrictions on special legislation must be viewed in light of the General Assembly's Article XI duty to "provide for the maintenance and support of a system of free public schools open to all children in the State." S.C. Const. art. XI, § 3; *McElveen,* 240 S.C. at 10, 124 S.E.2d at 596. These cases and constitutional provisions make clear the scope of legislative power is broader on the topic of schools, and consequently, this Court has traditionally sustained local laws related to the state's public education system. *See Bradley v. Cherokee Sch. Dist.,* 322 S.C. 181, 470 S.E.2d 570 (1996); *Smythe v. Stroman,* 251 S.C. 277, 162 S.E.2d 168 (1968); *Moseley v. Welch,* 209 S.C. 19, 39 S.E.2d 133 (1946); *Walker v. Bennett,* 125 S.C. 389, 118 S.E. 779 (1923).

By passing the Act allowing respondent School District to impose an impact fee, the General Assembly signaled its belief that conditions present in Dorchester County's School District

Number Two made it necessary to impose an impact fee to support its public education system. That is, the General Assembly opined that in order to fulfill its Article XI duty to provide for the "maintenance and support of a system of free public schools," an impact fee was necessary to offset the additional demand for public facilities created by new developments in Dorchester County. *See* S.C. Const. art. XI, § 3; *McElveen*, 240 S.C. at 10, 124 S.E.2d at 596. We have always provided great deference to the General Assembly in making these decisions, and the same respect should be afforded here.

In footnote two, the majority opines "the dissent loses sight of the sole issue before the Court in this appeal: does the complaint raise any issue of fact which, if resolved in appellants' favor, would entitle them to a judgment." The majority finds appellants' allegation that respondent School District is without unique funding needs, if proven, would entitle them to relief. However, in *Bradley*, this Court stated, "A law that is special only in the sense that it imposes a lawful tax limited in application and incidence to persons or property within a certain school district does not contravene the provisions of Article III, § 34(IX). Individual districts may impose a legal tax limited in application and incidence to persons or property within the prescribed area." *Bradley*, 322 S.C. at 186, 470 S.E.2d at 572 (internal citations omitted); *see also Moye v. Caughman*, 265 S.C. 140, 144, 217 S.E.2d 36, 38 (1975) (noting that although the appellant did not raise the issue in his brief, "[s]ection 34 does not deal with matters specifically covered by Article XI") (citing *Thorne v. Seabrook*, 264 S.C. 503, 216 S.E.2d 177 (1975); *McElveen*, 240 S.C. 1, 124 S.E.2d 592; *State v. Huntley*, 167 S.C. 476, 166 S.E. 637 (1932)). Notably, *Bradley* did not condition its holding on a school district having "unique or special funding needs"; rather, *Bradley* simply stated a tax that applies only to persons or property in a single school district is constitutional special legislation.

Accordingly, appellants' allegation that respondent School District is without unique funding needs, even if true, would not entitle them to judgment. *See* Rule 12(c), SCRCP. Therefore, under *Bradley*, the circuit court's grant of respondents' Rule 12(c) motion was proper, as is an analysis of the Act's constitutionality at this stage of the litigation. The majority properly notes the case at hand is different from

*Bradley* in that we are evaluating the propriety of an impact fee rather than a tax; however, I find no reason why the impact fee should be treated differently. Subdivisions of local authority, including school districts, have the ability to raise funds, which should include the utilization of an impact fee.[5]

The majority now takes the view that *Bradley* should be overruled to the extent it relies on *Hay v. Leonard,* 212 S.C. 81, 46 S.E.2d 653 (1948), because at the time *Hay* was issued, Article XI, section 6 expressly provided school districts with the power to levy an additional tax for the support of schools. However, while Article XI, section 6 was subsequently repealed, school districts continue to have taxing power under South Carolina's Constitution. For example, Article X, section 6 states, "Except as otherwise provided in this section, the General Assembly may vest the power of assessing and collecting taxes in all of the political subdivisions of the State, including ... school districts." S.C. Const. art. X, § 6. Further, Article X, section 7(b) directs school districts to prepare and maintain annual budgets, and in the event a district's expenses exceed its projected income, *requires* the school district to "provide for levying a tax in the ensuing year sufficient, with other sources of income, to pay the deficiency of the preceding year together with the estimated expenses for such ensuing year." S.C. Const. art. X, § 7(b).

These constitutional provisions align with South Carolina's history of allowing the General Assembly to take an individualized approach to the manner in which school districts are funded and operate. For example, in 2004, the General Assembly passed legislation allowing Lexington County school districts to impose a penny tax, Lexington County School District Property Tax Relief Act, Act No. 378, 2004 S.C. Acts 3142, and in 2011 renewed this legislation for an additional seven years. The General Assembly also enacted legislation in 2010, over the Governor's veto, tailored to the fiscal operations of Fairfield County schools. Act No. 308, 2010 S.C. Acts

---

5. York County currently imposes a school impact fee. York, S.C., Code §§ 153.75–82 (1996); *see also In re Nov. 4, 2008 Bluffton Town Council Election,* 385 S.C. 632, 637 n. 3, 686 S.E.2d 683, 686 n. 3 (2009) (stating the principle of law that courts will not take judicial notice of a municipal ordinance does not apply where the cited ordinance is not dispositive of the outcome of the case).

2845 (adding legislative appointees to the Fairfield County School Board and transferring fiscal authority to a financial council appointed by the legislative delegation).

Because each school district is unique and faces its own distinct challenges, it is important that the General Assembly retain its ability to legislate, when necessary, on an individualized basis. Eighty-five school districts provide education services in this State. Holley H. Ulbrich et al., *Local Governments and Home Rule in South Carolina* 8 (2011). Prior to the 1950s, South Carolina had more than 1,200 school districts, but in recent years, many of those districts have consolidated.[6] *Id.* Some counties maintain a single countywide school district, while others are comprised of multiple districts, ranging from two to seven in number. *Id.* Further, several school districts serve small parts of neighboring counties. *Id.*

Unsurprisingly, South Carolina's eighty-five districts vary in size and population, which affects operating costs per student. Holley H. Ulbrich, *School District Organization and Governance in South Carolina* 9 (2010). National studies have shown operating costs per pupil can dramatically decrease when small districts consolidate, while savings may dwindle with larger consolidating districts. *Id.* Instructional costs vary based on the number of students per classroom, and a district's geographic size greatly affects its transportation costs. *Id.* at 11. In 2005, the General Assembly created a temporary committee to study the sizes and costs of South Carolina's school districts. *Id.* at 12. The study revealed significant differences in spending per pupil between the twenty smallest and twenty largest districts—an estimated average difference of $277 per student. *Id.*

Moreover, fiscal authority amongst South Carolina's various school districts ranges from complete fiscal authority to no fiscal authority whatsoever. Ulbrich, *Local Governments and Home Rule in South Carolina* 13. Twenty-three districts have total fiscal independence to approve their own budgets and set their own millage rates, while twenty-nine districts have no fiscal authority. *Id.* at 13–14. Further, the power to raise millage rates varies greatly from one school district to

---

6. Recent consolidations have occurred in, among others, Marion, Orangeburg, and Sumter Counties. *Id.*

another, depending on the local legislation that governs school districts in that particular county. *Id.*

With these considerations in mind, South Carolina has historically taken an individualized approach regarding school-related legislation. Our districts vary in size, population, functionality, and most important to the issue at hand, operating costs. Moreover, with district lines being constantly redrawn through local legislation, our districts will inevitably continue to evolve. If the General Assembly is to fulfill its Article XI duty to maintain and support a free public school system for all children, we must continue to provide the level of deference necessary to legislate based on the evolving needs and unique capacities of each school district. *See* S.C. Const. art. XI, § 3; *Bradley,* 322 S.C. at 186, 470 S.E.2d at 572; *McElveen,* 240 S.C. at 10, 124 S.E.2d at 596. *Bradley* recognizes this principle and, in my view, should not be overruled. The majority's departure from *Bradley* will have detrimental effects on the operations and funding of our school districts.

Therefore, I would find the Act is sustainable under Article III, section 34(IX) as constitutional special legislation. Accordingly, I would affirm the circuit court's grant of respondents' Rule 12(c), SCRCP, motion for a judgment on the pleadings because appellants assertion that respondent School District is without unique funding needs would not entitle appellants to judgment. *See Bradley,* 322 S.C. at 186, 470 S.E.2d at 572 ("A law that is special only in the sense that it imposes a lawful tax limited in application and incidence to persons or property within a certain school district does not contravene the provisions of Article III, § 34(IX).").