513 S.E.2d 352

**MEDICAL SOCIETY OF SOUTH CAROLINA, Respondent,**

**v.**

**MEDICAL UNIVERSITY OF SOUTH CAROLINA, Appellant.**

No. 24908.

Supreme Court of South Carolina.

Heard Jan. 6, 1999.

Decided Feb. 22, 1999.

---

Thomas A. Hutcheson, of Sinkler & Boyd, P.A., of Charleston; and H. Simmons Tate, Jr., of Sinkler & Boyd, P.A., of Columbia, for appellant.

Carl F. Muller and Frank S. Holleman, III, both of Wyche, Burgess, Freeman & Parham, P.A., of Greenville; and John C. Moylan, III, of Wyche, Burgess, Freeman & Parham, P.A., of Columbia, for respondent.

W. Hogan Brown and Paula G. Benson, Attorneys for the Senate; Charles F. Reid, Counsel to the Speaker, South Carolina House of Representatives; and Stephen T. Draffin, Code Commissioner and Director, Legislative Council of the General Assembly, for amicus curiae President Pro Tempore of the Senate John W. Drummond, Speaker of the House of Representatives David H. Wilkins, and Legislative Council of the General Assembly.

MOORE, Justice:

This appeal is from an order enjoining a proposed transaction between appellant (MUSC) and Columbia/HCA Healthcare Corporation. We reverse.

## FACTS

On March 13, 1996, the MUSC Board of Trustees approved a proposed transaction with Columbia/HCA which included a master agreement, an academic affiliation agreement, a lease agreement, a license agreement, a shared services agreement, a guaranty agreement, and an option/affiliation dissolution agreement. Pursuant to these agreements, MUSC would lease the MUSC Medical Center in Charleston to Columbia/HCA for a term of twenty years for a base yearly rental of $8 million. MUSC would also sell Columbia/HCA certain

assets such as equipment, inventory, and accounts receivable for a purchase price of approximately $42.7 million. Columbia/HCA would operate and manage the Medical Center and MUSC would be paid for providing hospital services. In addition, the master agreement provides that before closing, an un-named affiliate or affiliates of Columbia/HCA would acquire title to the Trident Regional Medical Center, the Summerville Medical Center, and the Colleton Regional Medical Center which, together with the Medical Center, would comprise the Charleston System Facilities.

Shortly after the MUSC Board of Trustees approved these agreements, on April 4, 1996, the Attorney General issued an opinion in response to an inquiry by two legislators regarding the proposed transaction. The Attorney General concluded MUSC did not have the statutory authority to consummate the transaction with Columbia/HCA and the transaction would require authorization by the General Assembly.

Meanwhile, Bill H.3915, an unrelated bill regarding the composition and functions of the State Commission on Higher Education, was pending in the legislature. It had been referred to the Senate Education and Public Works Committee. Shortly after issuance of the Attorney General's opinion, on April 10, 1996, H.3915 was recalled from committee and resubmitted the same day, retaining its place on the calendar. On May 2, it received a favorable committee report "with amendment" and was read a second time in the Senate "with notice of general amendments."

H.3915 continued its way through the Senate and House. When it was finally reported out of the Conference Committee on May 23, it had the same original title regarding the State Commission on Higher Education but the body of the bill had been completely replaced with language authorizing MUSC to lease to a private operator with specific terms and conditions referring to Columbia/HCA. H.3915 passed both houses that day. Before H.3915 was ratified on May 30, its title was amended to conform to its subject indicating authorization of an MUSC lease agreement. The Governor signed the bill into law on June 4 and on June 5 it was enrolled in the Secretary of State's office. This enrolled bill became 1996 S.C. Act No. 390.

On July 26, respondent filed this action seeking to enjoin MUSC's transaction with Columbia/HCA. On summary judgment, the trial judge enjoined the transaction on the grounds 1) MUSC has no authority to dispose of the property in question, and 2) the authorization purportedly granted by Act No. 390 is invalid because the Act violates article III, §§ 17 and 34, of our State Constitution.

## ISSUES

1) Does MUSC have pre-existing statutory authority to dispose of buildings or personal property?

2) Is Act No. 390 unconstitutional because its title was inadequate before it was ratified and enrolled?

3) Is Act No. 390 unconstitutional special legislation?

## DISCUSSION

### 1) Pre-existing statutory authority

An agency created by statute has only the authority granted it by the legislature. *Nucor Steel, A Division of Nucor Corp. v. South Carolina Pub. Serv. Comm'n,* 310 S.C. 539, 426 S.E.2d 319 (1992). The trial judge found that, absent Act No. 390, the legislature has granted MUSC no authority to dispose of buildings or personal property. We agree.

First, Title 59, Chapter 123, which enumerates the specific powers of the MUSC Board of Trustees, does not include the power to dispose of real or personal property.[1] Under S.C.Code Ann. § 59–101–180 (1990), which applies generally to institutions of higher learning, the MUSC Board of Trustees has "the power to sell and dispose of any of its real estate other than buildings." Since this statute was enacted in 1968, MUSC's continuing lack of authority to dispose of buildings is demonstrated by the fact it has received legislative approval to

---

1. *See* S.C.Code Ann. §§ 59–123–60 (power to make bylaws and regulations and confer degrees in medicine and other health related professions); –80 (power to grant rights-of-way and easements for widening streets); –90 (power of eminent domain); –95 (power to borrow for purchase of diagnostic and therapeutical equipment); –210 (power to acquire and renovate student and faculty housing); and –220 and –310 (power to issue revenue bonds).

dispose of buildings in specific instances. *See, e.g.,* 1983 S.C. Act No. 151, Part I § 25D (granting MUSC Board of Trustees authority to sell residence designated for occupancy by President).

■ MUSC contends, however, it has the power to dispose of buildings and personal property under § 59–123–30 which provides:

> The charter of The Medical University of South Carolina is hereby confirmed and extended with all the rights and privileges granted heretofore by the original act of incorporation or by any subsequent extension of its charter.

Although MUSC's original 1832 charter included no right to dispose of property, MUSC argues it had acquired the power to transfer real and personal property by the time it became a State entity in 1913 [2] and this power is continued under § 59–123–30. MUSC points to the renewal of its charter on January 25, 1900, issued under the law allowing for incorporation at the time, 1896 S.C. Act No. 45. MUSC contends its certificate of renewal issued in 1900 under Act No. 45 bestowed all the powers granted corporations chartered under that Act which specifically includes the power to transfer real and personal property. 1896 Act No. 45, § 15.

First, this argument was not raised to or ruled upon by the trial judge and is not properly before this Court. *Wilder Corp. v. Wilke,* 330 S.C. 71, 497 S.E.2d 731 (1998).

In any event, this argument fails on its merits. As evidenced by the petition filed in 1900 with the Secretary of State requesting charter renewal for MUSC (then "Medical College of South Carolina"), the existing MUSC charter had expired on December 24, 1899. Under Act No. 45, if the charter of an existing corporation had expired and the Secretary of State issued a certificate of renewal, as opposed to issuing a charter, the following provision applied:

> Upon the issuing of such certificate of renewal the charter of such corporation shall thereupon be renewed, and the corporation shall be entitled to and vested with all the franchises, powers, rights, privileges, immunities and prop-

---

2. 1913 S.C. Act No. 126.

erty enjoyed, possessed and owned by it *at the expiration of its charter* . . . .

(emphasis added). 1898 S.C. Act No. 333, § 8; 1898 S.C. Act No. 479. Under Act No. 45, a certificate of renewal did not bestow the powers granted a corporation *chartered* under the Act.[3] Accordingly, MUSC gained no new powers under the certificate of renewal issued in 1900.

We hold the trial judge correctly ruled MUSC has no statutory authority without Act No. 390 to consummate its transaction with Columbia/HCA.

### 2) Article III, § 17

■ Absent existing statutory authority for its transaction with Columbia/HCA, MUSC must rely on the authority bestowed by Act No. 390. The trial judge found Act No. 390 unconstitutional under article III, § 17, which provides: "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

MUSC relies on the "enrolled bill rule" to argue that Act No. 390 is not unconstitutional under article III, § 17, because, irrespective of the title of the bill during the legislative process, the title of the bill as enrolled was sufficient.[4]

---

**3.** The distinction between a certificate of renewal and a charter is evident from the procedural requirements for each. A certificate of renewal could be obtained for a corporation with an expired charter simply by filing a petition signed by at least three officers, stockholders, or members. 1898 S.C. Act No. 333, § 8. In contrast, a corporation with a valid charter could "surrender its charter and secure a new *charter* under this Act" upon a majority vote of its stockholders. 1896 S.C. Act No. 45, § 10.

**4.** At the time H.3915 was passed by both houses, its title indicated the following:

TO AMEND SECTION 59–103–10 CODE OF LAWS OF SOUTH CAROLINA 1976, RELATING TO THE STATE COMMISSION ON HIGHER EDUCATION . . .; TO ADD SECTION 59–103–45 SO AS TO PROVIDE THAT THE COMMISSION ON HIGHER EDUCATION SHALL ESTABLISH PROCEDURES . . .; TO AMEND SECTION 59–103–60, RELATING TO RECOMMENDATIONS OF THE COMMISSION ON HIGHER EDUCATION TO THE BUDGET AND CONTROL BOARD AND THE GENERAL ASSEMBLY . . .; TO AMEND SECTION 59–103–90 RELATING TO THE PROFESSIONAL STAFF OF THE COMMISSION . . .; AND TO CREATE A JOINT LEGISLATIVE

The enrolled bill rule provides that an Act ratified by the presiding officers of the General Assembly, approved by the Governor, and enrolled in the Office of the Secretary of State is conclusively presumed to have been properly passed. Such an Act is not subject to impeachment by evidence outside the Act as enrolled to show it was not passed in compliance with law. *Beaufort County v. Jasper County*, 220 S.C. 469, 68 S.E.2d 421 (1951); *State v. Moorer*, 152 S.C. 455, 150 S.E. 269 (1929). The rationale for this rule is that respect for a co-equal and independent department of government and the need for finality in enacted laws outweigh the evils of applying the rule. *State v. Town Council of Chester*, 39 S.C. 307, 17 S.E. 752 (1893).

In *Wingfield v. South Carolina Tax Comm'n*, 147 S.C. 116, 144 S.E. 846 (1928), a case heard in this Court's original jurisdiction, petitioners argued the Act before the Court violated article III, § 17. Petitioners challenged not the title of the Act as enrolled, but its title during the legislative process. We applied the enrolled bill rule and held the Act as enrolled in the Secretary of State's Office was dispositive. 144 S.E. at 850. We refused to consider the legislative journals [5] or any other document *including the original bill* to impeach the enrolled Act which had a proper title. *Id.*

COMMITTEE TO STUDY THE GOVERNANCE, OPERATION, AND STRUCTURE OF HIGHER EDUCATION IN SOUTH CAROLINA. By the time H.3915 was ratified, however, the title had been amended to reflect that it was:

AMEND[ING] CHAPTER 7, TITLE 44, CODE OF LAWS OF SOUTH CAROLINA 1976, RELATING TO HOSPITALS BY ADDING ARTICLE 25 SO AS TO AUTHORIZE THE BOARD OF TRUSTEES OF THE MEDICAL UNIVERSITY OF SOUTH CAROLINA (MUSC) TO ENTER INTO LEASE, SALE, AND OTHER AGREEMENTS TO TRANSFER THE MANAGEMENT AND OPERATIONS OF THE MEDICAL UNIVERSITY HOSPITAL INCLUDING ITS LAND, FA-- CILITIES, AND ASSETS TO ONE OR MORE PRIVATE OPERA-, TORS UNDER CERTAIN TERMS AND CONDITIONS....

5. In *Wingfield*, we noted that the Constitution does not specifically require legislative journals to show titles of bills and ruled that only matters constitutionally required to be entered in legislative journals can be used to impeach an enrolled bill. 144 S.E. at 850. *See* article III, § 22 (yeas and nays of members of either house be entered on journal at desire of specified number from each house respectively); article XVI, § 1 (constitutional amendment with yeas and nays must be entered).

*Wingfield* is dispositive in this case. Under *Wingfield,* the trial judge should not have considered the constitutional sufficiency of the title of H.3915 before it was ratified and enrolled in the Secretary of State's Office. Since the title of Act No. 390 as enrolled is sufficient, the Act does not violate article III, § 17.

### 3) Article III, § 34

▮  The trial judge held Act No. 390 was special legislation in violation of article III, § 34(IX), which provides in pertinent part that "where a general law can be made applicable, no special law shall be enacted."

▮  We will not declare a statute unconstitutional as a special law unless its repugnance to the Constitution is clear beyond a reasonable doubt. *Horry County v. Horry County Higher Educ. Comm'n,* 306 S.C. 416, 412 S.E.2d 421 (1991). The purpose of the prohibition on special legislation is to make uniform where possible the statutory laws of this State in order to avoid duplicative or conflicting laws on the same subject. *Duke Power, supra.* We have repeatedly acknowledged, however, that there are cases where a special law will best meet the exigencies of a particular situation.

▮  A special law is not unconstitutional where there is "a substantial distinction having reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects and places excluded." *Horry County,* 306 S.C. at 419, 412 S.E.2d at 423; *Duke Power Co. v. South Carolina Pub. Serv. Comm'n,* 284 S.C. 81, 90, 326 S.E.2d 395, 400–401 (1985); *Shillito v. City of Spartanburg,* 214 S.C. 11, 20, 51 S.E.2d 95, 98 (1948). The General Assembly must have a logical basis and sound reason for resorting to special legislation. *Horry County, supra; Gillespie v. Pickens County,* 197 S.C. 217, 14 S.E.2d 900 (1941). This Court will not overrule the legislature's judgment that a special law is necessary unless there has been a clear and palpable abuse of legislative discretion. *Sirrine v. State,* 132 S.C. 241, 128 S.E. 172 (1925), *overruled on other grounds, McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985).

In *South Carolina Pub. Serv. Auth. v. Citizens and Southern Nat'l Bank,* 300 S.C. 142, 386 S.E.2d 775 (1989), we upheld special legislation relating only to the Santee Cooper electric utility allowing it to change its fiscal year to the calendar year. We noted that Santee Cooper was unique since it was the only State agency involved in the production, sale, and distribution of electricity, and that the Act in question was enacted to address a special condition facing this unique agency. 300 S.C. at 161, 386 S.E.2d at 786. Accordingly, we concluded the Act before us was not prohibited special legislation.

In another special legislation case, *Duke Power, supra,* we upheld an Act allowing voters to approve a referendum granting the Greenwood County Power Commission approval to sell its electric utility to Duke. Duke challenged the Act on the ground of special legislation. We noted the Greenwood County Power Commission had no power to sell its facility without legislative authorization, and the proposed transaction was unique. Accordingly, the challenged Act was not prohibited special legislation. 284 S.C. at 92–93, 326 S.E.2d at 402.

In this case, MUSC is a unique State agency because it is the only one that owns and operates an acute-care teaching hospital. Further, the proposed transaction regarding hospital services is one unique to MUSC. Moreover, the fact that MUSC has no authority to enter the proposed transaction without legislative approval indicates such legislation is necessary. Since the legislature had a "logical reason and sound basis" for enacting a special law authorizing the proposed transaction, Act No. 390 is not unconstitutional special legislation.

## CONCLUSION

While we agree with the trial judge's ruling that MUSC has no statutory authority to dispose of buildings or personal property absent the authorization of Act No. 390, we find Act No. 390 does not violate article III, §§ 17 and 34(IX). Since Act No. 390 is valid, the injunction issued in this case is

**REVERSED.**

FINNEY, C.J., TOAL, WALLER and BURNETT, JJ., concur.