600 S.E.2d 529

Robert B. KIZER, Laura Cabiness, and the City of Charleston, a Municipal Corporation, Respondents,

v.

Mary B. CLARK, William Wilder, Paul Hadley, III, Karen Bennett, Parris Williams, Leo Simonin and Gwendolyn Johnson, in their capacities as Commissioners of Election for the Proposed Town of James Island, Mary B. Clark, William Wilder, Parris Williams, W. William Woosley, and Joseph Qualey, in their capacities as the Mayor and Town Council of the Proposed Town of James Island, the Town of James Island, and James M. Miles, in his capacity as Secretary of State of the State of South Carolina, Defendants,

Of whom Mary B. Clark, William Wilder, Paul Hadley, III, Karen Bennett, Parris Williams, Leo Simonin and Gwendolyn Johnson, in their capacities as Commissioners of Election for the Proposed Town of James Island and Mary B. Clark, William Wilder, Parris Williams, W. William Woosley, and Joseph Qualey, in their capacities as the Mayor and Town Council of the Proposed Town of James Island, and the Town of James Island, Appellants.

No. 25846.

Supreme Court of South Carolina.

Heard March 2, 2004.

Decided July 26, 2004.

Rehearing Denied Oct. 18, 2004.

A. Camden Lewis and Daryl G. Hawkins, of Lewis, Babcock & Hawkins, of Columbia; Trent M. Kernodle, David A. Root, Christine Companion Varnado, and Robert B. Varnado, all of Kernodle, Taylor & Root, of Charleston; and Michael M. Socha, of Charleston, for appellants.

Frances I. Cantwell and William B. Regan, of Regan and Cantwell, of Charleston; Susan J. Herdina, Assistant Corporation Counsel, of Charleston; Charlton DeSaussure, Jr., of Haynesworth Sinkler Boyd, P.A., of Charleston; and Timothy A. Domin, of Clawson & Staubes, of Charleston, for respondents Kizer, Cabiness, and City of Charleston. Harold W. Jacobs and Paul Dominick, of Nexsen Pruet Jacobs Pollard & Robinson, of Charleston, for defendant James M. Miles.

Attorney General Henry Dargan McMaster, Deputy Attorney General Treva G. Ashworth, and Assistant Deputy Attorney General J. Emory Smith, all of Columbia, for amicus curiae State of South Carolina.

Justice MOORE.

Respondents (City) brought this action challenging the 2002 incorporation of the Town of James Island (Town). The trial court found that S.C.Code Ann. § 5–1–30(A)(4) (Supp.2003), by which Town established the contiguity necessary for incorporation, was unconstitutional as special legislation. We affirm.

## FACTS

Section 5–1–30 sets forth the requirements for incorporation as follows:

### § 5–1–30. Prerequisites to issuance of corporate certificate to proposed municipality.

(A) Before issuing a corporate certificate to a proposed municipality, the Secretary of State shall first determine:

(1) that the area seeking to be incorporated has a population density of at least three hundred persons a square mile according to the latest official United States Census;

(2) *that no part of the area is within five miles of the boundary of an active incorporated municipality;*

(3) that an approved service feasibility study for the proposed municipality has been filed with and approved by the Secretary of State; and

(4) *that the area proposed to be incorporated is contiguous. Contiguity is not destroyed by an intervening marshland located in the tidal flow or an intervening publicly-owned waterway, whether or not the marshland located in the tidal flow or the publicly-owned waterway has been previously incorporated or annexed by another municipality. The incorporation of a marshland located in the tidal flow or a publicly-owned waterway does not preclude the marshland located in the tidal flow or the publicly-owned waterway from subsequently being used by any other municipality to establish contiguity for purposes of an incorporation if the distance from highland to highland of the area being incorporated is not greater than three-fourths of a mile.*

(B) *When an area seeking incorporation has petitioned pursuant to Chapter 17 the nearest incorporated municipality to be annexed to the municipality, and has been refused annexation by the municipality for six months, or when the population of the area seeking incorporation exceeds fifteen thousand persons, then the provision of the five-mile limitation of this section does not apply to the area.*

(C) The five-mile limit does not apply when the boundaries of the area seeking incorporation are within five miles of the boundaries of two different incorporated municipalities in two separate counties other than the county within which the area seeking incorporation lies, and when the boundaries of the proposed municipality are more than five

miles from the boundaries of the nearest incorporated municipality that lies within the same county within which the proposed municipality lies, and when the land area of the territory seeking incorporation exceeds one-fourth of the land area of the nearest incorporated municipality.

(D) The population requirements do not apply to areas bordering on and being within two miles of the Atlantic Ocean and to all sea islands bounded on at least one side by the Atlantic Ocean, both of which have a minimum of one hundred fifty dwelling units and at least an average of one dwelling unit for each three acres of land within the area and for which petitions for incorporation contain the signatures of at least fifteen percent of the qualified electors of the respective areas seeking incorporation.

(E) This section does not apply to those areas which have petitioned to the Secretary of State before June 25, 1975, or which may be under adjudication in the courts of this State. The five-mile limit does not apply to counties with a population according to the latest official United States Census of less than fifty-one thousand.

(emphasis added).

Subsection (A)(4) was enacted in response to lobbying by Town after our decision in *Glaze v. Grooms,* 324 S.C. 249, 478 S.E.2d 841 (1996). In *Glaze,* we addressed a challenge to Town's 1992 attempt at incorporation. The trial court found Town lacked the necessary contiguity. Town appealed claiming that contiguity is not destroyed by marshlands and creeks and therefore the incorporated highland areas of Town were contiguous. We agreed that marshlands and creeks do not destroy contiguity; however, these marshlands and creeks had previously been annexed by other municipalities and therefore could not be used to establish Town's contiguity. 324 S.C. at 253, 478 S.E.2d at 844.

After *Glaze,* the definition of contiguity in subsection (A)(4) was enacted and Town again sought incorporation. Because it is within five miles of City, under § 5–1–30(B) Town would have to request annexation by City before incorporating unless the proposed town had a population of at least 15,000. By establishing contiguity using marshland and waterways that had already been annexed by City, Town was able to amass a

population of 15,000, allowing it to bypass a request for annexation before incorporating.

After the Secretary of State issued Town a certificate of incorporation, City brought this action challenging subsection (A)(4) as unconstitutional special legislation claiming James Island is the only geographic area in the State that needs the contiguity provision of subsection (A)(4) to amass a population of 15,000. The trial court found subsection (A)(4) "creates a classification among municipalities that is arbitrary" and concluded it is unconstitutional special legislation. The trial court enjoined Town's exercise of municipal functions.

Town appeals. The Attorney General has submitted an amicus brief in support of finding the legislation constitutional. The trial court's injunction has been stayed pending appeal.

## ISSUE

Is § 5–1–30(A)(4) unconstitutional special legislation?

## DISCUSSION

Our State Constitution specifically forbids the enactment of special legislation regarding the incorporation of municipalities. Article III, § 34, provides:

> The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following purposes, to wit:
>
> . . .
>
> II. To incorporate cities, towns or villages . . . .

Article VIII, § 8, similarly provides: "The General Assembly shall provide by general law the criteria and the procedures for the incorporation of new municipalities . . . . No local or special laws shall be enacted for these purposes." Article VIII, § 10, further provides: "No laws for a specific municipality shall be enacted, and no municipality shall be exempted from the laws applicable to municipalities . . . ."

▮ A law is general when it applies uniformly to all persons or things within a proper class, and special when it applies to only one or more individuals or things belonging to that same class. *McKiever v. City of Sumter,* 137 S.C. 266,

135 S.E. 60 (1926). A law that is general in form but special in its operation violates the constitutional prohibition against special legislation. *Thomas v. Macklen,* 186 S.C. 290, 195 S.E. 539 (1938). The fact that a law operates to affect only one person or one locale, however, does not necessarily make it special legislation. *Kalk v. Thornton,* 269 S.C. 521, 238 S.E.2d 210 (1977); *Timmons v. South Carolina Tricentennial Comm'n,* 254 S.C. 378, 175 S.E.2d 805 (1970).[1]

■ If the legislation does not apply uniformly, the essential inquiry is whether the legislation creates an unlawful classification. *McKiever, supra.* The mere fact that a statute creates a classification does not make it special legislation. *Elliott v. Sligh,* 233 S.C. 161, 103 S.E.2d 923 (1958); *Duke Power Co. v. South Carolina Pub. Serv. Comm'n,* 284 S.C. 81, 326 S.E.2d 395 (1985). The constitutional prohibition against special legislation operates similarly to our equal protection guarantee in that it prohibits an unreasonable classification. *Thompson v. South Carolina Comm'n on Alcohol and Drug Abuse,* 267 S.C. 463, 229 S.E.2d 718 (1976); *see also Duke Power Co., supra.* A classification is arbitrary, and therefore unconstitutional, if there is no reasonable hypothesis to support it. *Elliott v. Sligh, supra.*

■ On the other hand, the legislature may use a classification "if some intrinsic reason exists why the law should operate upon some and not upon all, or should affect some differently from others." *Id.* at 165, 103 S.E.2d at 926. Where a special law will best meet the exigencies of a particular situation, it is not unconstitutional. *Med. Soc. of South Carolina v. Med. Univ. of South Carolina,* 334 S.C. 270, 513 S.E.2d 352 (1999). We will not overrule the legislature's judgment that a special law is necessary unless there has been a clear and palpable abuse of legislative discretion. *Id.*

*1. What classification is created by subsection (A)(4)?*

■ The parties stipulated that without the contiguity provision of (A)(4) allowing Town to use marshes and waterways previously annexed by City, Town could not reach the

---

1. Further, the fact that a law was enacted as a result of lobbying does not transform it into special legislation. *Kalk,* 269 S.C. at 526, 238 S.E.2d at 213.

15,000 population threshold. City and Town each presented expert testimony regarding the potential application of subsection (A)(4) in different geographic areas of the State. The main thrust of City's evidence was that James Island was the only geographic area that *needed* subsection (A)(4) to reach the 15,000 population threshold.

Town, on the other hand, presented evidence that at least three other unincorporated areas—outside Conway, Greer, and Summerville—could use subsection (A)(4) to create contiguity. Town's expert testified that City's evidence failed to take into account the fact that municipal incorporation depended not strictly upon geography but also upon "political will" which could influence whether the 15,000 population threshold would be needed for a politically desired configuration.

The trial court found subsection (A)(4) created a class consisting only of James Island because only James Island needed to use it to meet the 15,000 population threshold. We disagree. The application of subsection (A)(4) is not limited to unincorporated areas that need to reach the 15,000 population threshold. Subsection (A)(4) applies to any unincorporated area that is geographically configured so that it may establish contiguity using previously annexed marshland and waterways, regardless of whether the 15,000 population threshold is a factor in the incorporation.

The evidence is undisputed that at least three other unincorporated areas in the State are so configured and could use subsection (A)(4) to establish contiguity for incorporation. Accordingly, the class created by subsection (A)(4) is not limited to James Island.

## 2. *Is the classification arbitrary?*

In *Thomas v. Macklen, supra,* we considered a law concerning the selection of town council members that was applicable only to "resort communities." First, we noted that the definition of "resort communities" in the Act was in practical effect limited to Myrtle Beach. This fact alone, however, was not determinative. We went on to consider whether there was any reasonable hypothesis to support a class of "resort communities:"

We are unable to perceive any rational difference of situation or condition to be found in what is called a "resort community" from that of any municipal corporation organized under the general law in relation to the selection of its town council.... [T]he practical effect of the operation of the law will introduce radical diversity into the governmental structure of our municipal corporations.

195 S.E. at 545.[2]

Here, in finding an arbitrary classification, the trial court focused on the fact that only tidal marshes and waterways, and not freshwater marshes, parks, or highways, could be used to create contiguity under subsection (A)(4). The broader question, however, is whether there is any rational basis to allow particularly defined geographic areas to incorporate using territory that lies within another's borders.

We find the classification arbitrary because there is no rational reason to allow only certain geographic areas to use territory belonging to a neighboring municipality to enable incorporation. Subsection (A)(4) creates an unconstitutional diversity in municipal incorporation laws, which are constitutionally required to be uniform, by allowing only certain areas to incorporate using territory belonging to another municipality. We hold this provision is unconstitutional special legislation.

**AFFIRMED.**

WALLER, J., Acting Justices MARC H. WESTBROOK and ROGER L. COUCH, concur. TOAL, C.J., concurring in a separate opinion.

---

2. Similarly, we have found legislation based on population limits unconstitutional where there is no rational basis for treating government entities differently based on population numbers. *E.g., U.S. Fidelity & Guar. Co. v. City of Columbia,* 252 S.C. 55, 165 S.E.2d 272 (1969) (license fee for city populations in excess of 90,000); *Town of Forest Acres v. Town of Forest Lake,* 226 S.C. 349, 85 S.E.2d 192 (1954) (annexation rules for county populations in excess of 85,000); *State v. Ferri,* 111 S.C. 219, 97 S.E. 512 (1918) (law prohibiting traffic in seed cotton applying only to counties containing cities of 50,000 or more).

96

Chief Justice TOAL, concurring:

I concur with the majority's result in every respect. I write separately only to note that this opinion is consistent with my dissent in *Ed Robinson Laundry and Dry Cleaning, Inc. v. South Carolina Dept. of Revenue*, 356 S.C. 120, 588 S.E.2d 97 (2003). In my dissent, I explained that, in my view, the 61 sales tax exemptions found in S.C.Code Ann. section 12–46–2120 (Supp.2002) rendered the statute unconstitutional because there was no rational basis for the classifications, which treated similarly situated entities differently for sales tax purposes.

Likewise, in reaching its conclusion today that the classification created by section 5–1–30(A)(4) (Supp. 2003) is arbitrary and therefore unconstitutional, the majority explains that there is no rational basis for allowing only certain geographic areas to use territory belonging to a neighboring municipality for the purposes of incorporation.

In sum, I believe that both opinions correctly analyze the constitutionality of the statutes in question.